THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN M. WARTELLA,                    :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :    3:15-CV-614
                                     :    (JUDGE MARIANI)
THE GUARDIAN LIFE INSURANCE          :
COMPANY OF AMERICA                   :
                                     :
        Defendant.                   :

FILED
SCRANTON

OCT – 6 2017

PER _____
        DEPUTY CLERK

MEMORANDUM OPINION

I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff John M. Wartella, a former employee of Defendant, The Guardian Life

Insurance Company of America ("Guardian"), alleges three counts of breach of contract: (i)

breach of a provision in his employment agreement, which entitled him to renewal

commissions on policies he originated for ten years after his termination (Count I); (ii)

breach of an agreement with Defendant that it would pay his attorneys' fees in seeking

Social Security benefits pursuant to a Disability Insurance policy (Count II); and (iii) breach

of a provision in that Disability Insurance policy, which resulted in an improper offset of his

Social Security benefits against his disability benefits paid by Defendant. Only Count I is at

issue in this motion to dismiss.

This Court has addressed the substance of the claim in Count I once before on April

7, 2017, resulting in a dismissal of Plaintiff's original complaint without prejudice. (Doc. 26).

Plaintiff filed an Amended Complaint on April 21, 2017 with additional allegations, though

1

the claim in Count I remained substantively the same. Defendant moved to dismiss Count I of the Amended Complaint on May 5, 2017. For reasons stated below, this Court will deny Defendant's motion.

## II. FACTUAL ALLEGATIONS

The relevant facts of Count I, which is the sole Count at issue in this motion, are straightforward. Mr. Wartella alleges he is entitled to commissions on insurance policies he originated during his employment for a period of ten years after his employment ended. Guardian disputes that fact and counters that his post-employment benefits do not include compensation for such commissions. For purposes of resolving this motion, this Court accepts the Amended Complaint's allegations as true.

According to the Amended Complaint, Mr. Wartella was hired by Guardian on January 1, 1986 as a field representative. (Doc. 28 ¶ 7). Mr. Wartella alleges he entered into an employment agreement with Guardian, which not only provided a fixed base salary, but also commissions on the policies sold by him pursuant to an "installment provision" of his employment agreement. (*Id.* ¶¶ 9–11). According to the Amended Complaint, the installment provision entitled Mr. Wartella to renewal commissions for policies he originated throughout his employment and for ten years afterwards. (*Id.* ¶ 11). At this time, however, neither party has been able to locate a copy of the agreement. (*Id.* ¶ 8 n.1, Doc. 30 ¶ 17 n. 2). Instead, Guardian has attached as an exhibit to its brief an "unsigned copy of the [Field

Representative] Agreement that Mr. Wartella would have signed when he began working as a Guardian field representative..." (*Id.*)

As a preliminary matter, this Court will ignore the unsigned Field Representative Agreement for purposes of the motion to dismiss. It is true that the *actual* employment agreement between Mr. Wartella and Guardian would have been "integral to or explicitly relied upon in the complaint," and thus may be considered by this Court without conversion to motion for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). An unsigned copy of a blank agreement, however, particularly one that Mr. Wartella has not admitted is an agreement with the same relevant provisions as the one he signed, cannot be properly examined by the Court at this stage. Guardian claims that the Agreement, along with other extrinsic documents attached to its brief, were "admitted" by Mr. Wartella to be "genuine in response to requests for admissions." (Doc. 34 at 8). However, Mr. Wartella *denied* that the document is a "genuine copy of an agreement Mr. Wartella signed," and pointed out that the document "does not contain Mr. Wartella's signature." (Doc. 30-3 ¶ 2). Therefore, the Field Representative Agreement and the related Field Representative Plan attached to Guardian's brief shall not be considered by this Court.

According to the Amended Complaint, Mr. Wartella worked at Guardian until 2005, when he was diagnosed with a serious heart condition and as a result, went on a short term disability plan with Guardian. (Doc. 28 ¶¶ 17, 18). He attempted to return to work after five months on disability, but discovered that his condition, which included shortness of breath,

3

stress, depression, and fatigue, left him unable to adequately perform his job. (*Id.* ¶¶ 19–

21). He therefore went back on short-term disability. (*Id.* ¶¶ 22, 23).

On May 31, 2007, Guardian terminated Mr. Wartella's employment upon exhaustion

of his short term disability. (*Id.* ¶ 24). Upon termination, Guardian informed Mr. Wartella

that his benefits would continue after his termination. (*Id.* ¶ 25). Mr. Wartella understood

this to mean that his post-termination benefits would include all commissions on policy

renewals that he was entitled to under the installment provision of his employment

agreement. (*Id.* ¶ 27). At the time of his termination, Mr. Wartella was earning over

$160,000.00 annually from his policy renewal commissions pursuant to the installment

provision of his employment agreement. (*Id.* ¶ 28). By Mr. Wartella's estimates, these

renewals would have continued to earn him over $100,000 annually for a period of 18

years.[1] (*Id.* ¶ 29).

## III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[1]     It is unclear from the face of the Amended Complaint why Mr. Wartella would earn commissions for
18 years post-employment when he alleges that the installment provision would only run for ten
years. This fact may well be resolved during discovery, but is not necessary to the resolution of
this motion.

draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted). "[T]he presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face'...Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 and *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786–87 (citing *Iqbal*, 556 U.S. 679, 129 S.Ct. 1937).

## IV. ANALYSIS

Guardian moves to dismiss Count I of the Amended Complaint on the grounds that it is time-barred as a matter of law by the applicable statute of limitations under 42 Pa.C.S.A. § 5525. (Doc. 34, at 1–2). Pursuant to Pennsylvania state law, the statute of limitations for a breach of contract claim is four years. 42 Pa.C.S.A. § 5525. Generally, this statute of limitations begins to run when "the plaintiff's cause of action arises or accrues." *Cooper v. Sirota*, 37 F. App'x 46, 48 (3d Cir. 2002); *see also Packer Soc. Hill Travel Agency Inc. v. Presbyterian Univ. of Penn. Med. Ctr.*, 635 A.2d 649, 652 (Pa. Super. Ct. 1993). A cause of action accrues when "when there is an existing right to sue based on the breach of contract." *Cooper*, 37 F. App'x at 48.

Neither party disputes that the applicable statute of limitations under Pennsylvania law is four years, or that the statute of limitations begins to run on the date Mr. Wartella's cause of action accrues. (Doc. 34 at 2; Doc. 37 at 5). The sole question before the Court is when Mr. Wartella's claim accrued.

In its April 7, 2017 opinion, this Court noted that it could not "ascertain from the face of the [original] complaint when any commissions allegedly due to the Plaintiff were payable and when the Defendant allegedly failed to pay them or otherwise made clear to the Plaintiff that no such commissions on renewals of policies previously issued were to be paid to him." *Wartella v. Guardian Life Ins. Co. of Am.*, 2017 WL 1364212, at *5 (M.D. Pa. Apr. 7, 2017). In dismissing the claim without prejudice, the Court noted that the mere allegation in the

original complaint that Guardian "continually failed to pay Mr. Wartella the renewal commissions to which he was entitled ..." did not "give any indication as to when those commissions became due." *Id.* at *5.

In so holding, this Court essentially instructed Mr. Wartella that a well-pled complaint must include allegations of whether the commission payments were under a lump-sum, periodic, or another form of payment scheme as well as allegations of when such payments became due. The Amended Complaint adds the fact that Mr. Wartella received "an annual commission on each new policy sold and each policy renewed" during his employment, and that he was "entitled to continue to receive his commission for any and all policy renewals throughout his employment and ten (10) years afterwards." (Doc. 28 ¶¶ 10, 11). Mr. Wartella also alleges that these commissions earned him over $160,000 "annually" during his employment and should have earned him over $100,000 "annually" post-employment. (*Id.* ¶¶ 28, 29). While it is not explicit whether this "annual" payment scheme was to remain post-employment or if some other periodic payment scheme was to take place, the reasonable inference from the Amended Complaint is that Mr. Wartella received such commissions on an annual basis during his employment, and believed he was to receive the same annual commissions post-employment. It is also revealing that Mr. Wartella's own brief alleged that Guardian "failed to make these *annual commission payments* to Mr. Wartella since [his termination]" and that "Mr. Wartella was entitled to *annual commission*

*payments* on renewed insurance policies for a period of ten years after his employment, or until May 2017." (Doc. 37 at 4–5, 6) (emphasis added).

"In general, an action based on contract accrues at the time of breach." *Id.* However, it is well established that in Pennsylvania, "where a contract calls for periodic or installment payments, a separate and distinct cause of action accrues with each failure to make payment." *Total Control, Inc. v. Danaher Corp.*, 359 F. Supp. 2d 387, 391 (E.D. Pa. 2005)). *See also American Motorists Ins. Co. v. Farmers Bank and Trust Co.*, 644 A.2d 1232, 1235 (1994) ("Our courts have held that where installment or periodic payments are owed, a separate and distinct cause of action accrues for each payment as it becomes due.") (citing *Ritter v. Theodore Pendergrass Teddy Bear Prods., Inc.*, 514 A.2d 930, 935 (1986)); *Pennsylvania Turnpike Comm'n v. Atlantic Richfield Co.*, 375 A.2d 890, 892 (1977) ("[Plaintiff] could have no cause of action until each allegedly improperly computed payment was made and, as to each such payment, a separate and distinct cause of action would accrue.") *aff'd*, 482 Pa. 615, 394 A.2d 491 (1978).

Thus, Mr. Wartella's claim for annual post-employment commissions did not accrue in its entirety on the first date his post-employment commissions was due. Rather, he accrues a separate cause of action each year on the date his annual commissions should have been paid. By way of example, Mr. Wartella's annual commission payment due in the first year after his termination is now time-barred. He was terminated in May 2007, thus, regardless of the exact date his annual commissions were to become due, he would have

8

received at least one annual commission by the end of 2008, at which time the statute of limitations on that particular installment payment would have begun to run. The 2008 annual commission would therefore be time-barred in 2012. As Mr. Wartella first filed this claim in state court in May 2014, (Doc. 1 at 1), all payments that became due before May 2010 are time-barred. However, any payments that became due after that time will survive.

In *Fresh Start Indus., Inc. v. ATX Telecommunications Servs.*, 295 F. Supp. 2d 521 (E.D. Pa. 2003), a telemarketer sued its telephone services provider for breach of contract because of alleged overcharges. There, the court held that "a separate cause action [accrued] each time plaintiff was allegedly over-billed for service and payment became due. Thus, the statute of limitations period has not run on any claim for breach arising from any bills becoming due (and hence any payment made on those bills) within four years prior to plaintiff's filing of its complaint on March 22, 2002." *Id.* at 525. Following the same logic, the court in *Am. Motorists Ins. Co. v. Farmers Bank & Tr. Co. of Hanover*, 644 A.2d 1232, 1235 (1994) held that plaintiff, an insurance company claiming it was no longer required to pay for care of an insured customer in a nursing home, "accrues a new cause of action with each payment it makes for Nancy Sterner's care." *Id.* at 1235. Thus, the statute of limitations did not bar American from contesting "those payments which were made within the four years preceding the filing." *Id.* *See also William Sklaroff Design Assocs., Inc. v. Spinneybeck Enterprises, Inc.*, WL 557587, at *8 (E.D. Pa. Sept. 30, 1996) ("Nevertheless, the limitations period has not expired as to any damages to which plaintiff could prove

9

entitlement for the four years preceding the filing of this action. The contract claims are premised on an alleged continuing right to royalty payments on a monthly basis."); *Lim v. Rajan*, 2013 WL 5272845, at *8 (E.D. Pa. Sept. 18, 2013) (finding that while the Employment Agreement was unclear on its face, it appeared to the court that plaintiff "received his salary and health payments on a monthly basis," thus any claims on payments "due to Lim under the Employment Agreement on or after [4 years before the filing date of the suit] survive.") *Cf. Mikail v. PAM Mgmt., Inc.*, 2017 WL 1344676, at *15 (M.D. Pa. Apr. 12, 2017) (holding that first two annual interest payments which were due to plaintiff were "time barred as they accrued more than four years before plaintiff commenced this action.")

Guardian argues that the general rule of installment payments accrual should not apply in this case because there has been "a complete repudiation" of Mr. Wartella's right to receive commissions. Guardian's argument relies on the unsigned employment agreement, which states that "[o]n termination, the Company's' liability for remuneration of any kind shall cease, except for possible...compensation as set forth in the Field Representative Plan." Doc. 30-2, at 2. Guardian then attaches yet *another* document to its motion papers, a copy of the "Field Representative Plan" referenced in the employment agreement. The Field Representative Plan states that all compensation "ceases at the termination of the contract *except*" when termination is the result of a reason other than retirement or death, in which case a field representative such as Mr. Wartella may receive "GIWL, SUPP and group insurance compensation policy years one through ten inclusive..." (Doc. 30-5 at 2).

10

Notwithstanding the fact that this provision, convoluted as it is, would tend to *support* Mr. Wartella's contention that he is entitled to certain policy commissions for a period of ten years upon termination, this Court will disregard these documents. For reasons stated above, unauthenticated extrinsic documents cannot be properly considered by this Court.

Guardian also asks this Court to consider a June 26, 2007 letter from Guardian to Mr. Wartella, which purportedly outlined the "welfare and pension benefits" that would be afforded him post-termination. Guardian contends that nowhere in this June 2007 letter does it mention renewal commission benefits. (Doc. 30 at 8). Again, on a motion to dismiss, "courts consider *only* the allegations contained in the complaint, exhibits attached to the complaint, matters of public record, and 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Montgomery v. Laborers Dist. Council of Philadelphia & Vicinity*, 2015 WL 4522917, at \*2 (E.D. Pa. July 27, 2015) (citing *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)) (emphasis added). While the June 2007 letter is referenced in the Amended Complaint, Mr. Wartella denied the authenticity of this letter "in its entirety" in his requests for admissions. (Doc. ¶¶ 25, 28). As is the case with the unsigned employment agreement, the June 2007 letter will not be considered by the Court at this time.

Even if the Court were to rely on these documents, neither the employment agreement, which refers the reader to yet another extrinsic document Guardian asks this

Court to consider (the "Field Representative Plan"), nor the June 27 letter, from which

Guardian asks this Court to draw a negative inference, would be sufficient to defeat the

installment contracts rule. In recent years, some Pennsylvania courts have said that "the

general rule governing installment contracts does not apply when an employer or insurer

has completely repudiated an obligation to make periodic payments to an employee or plan

participant, and the period of limitation instead begins at the time of repudiation." *Algayer v.*

*Metro. Life Ins. Co.*, No. CIV.A.04-324, 2004 WL 1588232, at *2 (E.D. Pa. July 12, 2004).

But the repudiation must be explicit and clear.

In the Third Circuit case that first addressed the issue, *Henglein v. Colt Indus.*

*Operating Corp.*, 260 F.3d 201, 213 (3d Cir. 2001), the court admitted that there was a

"recurring question with such [installment payment] agreements [over] whether failure to pay

each installment establishes a separate cause of action on each occasion a payment is

withheld, or whether only one cause of action accrues for breach of the contract."

Ultimately, the court held that "where there was an *outright repudiation* at the time the

employees' services were terminated, it is reasonable to expect that the statute of

limitations began to run at that point." *Id.* at 214 (emphasis added). In *Henglein*, plaintiffs,

who were former employees of a steel manufacturing plant, sued the company for "plant

shutdown benefits" upon their termination. *Id.* at 205. The court deemed repudiation

occurred at the time of plaintiffs' termination, when they were "advised that they would not

receive shutdown benefits." *Id.* at 213.

12

*Henglein* is consistent with the well-established principle that "anticipatory

repudiation or breach requires 'an absolute and unequivocal refusal to perform or a distinct

and positive statement of an inability to do so.'" *Andrews v. Cross Atl. Capital Partners,*

*Inc.*, 158 A.3d 123, 130 (2017) (quoting *Harrison v. Cabot Oil & Gas Corp.*, 110 A.3d 178,

184 (2015)); *Harrison v. Cabot Oil & Gas Corp.*, 631 Pa. 268, 278, 110 A.3d 178, 184

(2015) (same). "In order to constitute a repudiation, a party's language must be sufficiently

positive to be reasonably interpreted to mean that the party will not or cannot perform."

*Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co.*, 2012 PA Super 163, 53 A.3d 53,

64 (2012) (citing *Oak Ridge Const. Co. v. Tolley*, 504 A.2d 1343, 1346–1347 (1985)).

Thus, to trigger a repudiation in the installment contract context, the repudiation must

be a plain and positive statement. The case law on repudiation is replete with examples of

outright and explicit denials from the allegedly breaching party. In *Algayer v. Metro. Life Ins.*

*Co.*, 2004 WL 1588232, at *1 (E.D. Pa. July 12, 2004), for example, the repudiating party,

an insurance company, denied the plaintiff's claim, "advised her of her right to appeal the

denial of her claim and gave her the opportunity to submit additional proof of disability." In

*Koert v. GE Grp. Life Assur. Co.*, 231 F. App'x 117 (3d Cir. 2007), an ERISA plan participant

brought suit against the plan fiduciary for her right to benefits and breach of fiduciary duties.

The court there held that the statute of limitations began to run when plaintiff "became

aware of these facts at the time she was notified that her claim had been denied." *Id.* at

121. In *Lang v. Continental Assurance Co.*, 54 F. App'x 72, 75 (3d Cir. 2002), a case

regarding an employer's obligation to pay a monthly cost of living allowance ("COLA") under a disability insurance policy, the court held that the statute of limitations began to run when "appellant was unequivocally informed ... that Continental would not be providing the COLA benefit." In *Leporace v. New York Life and Annuity*, 619 F. App'x. 172, 176 (3d Cir. 2015), the Third Circuit again found that the statute of limitations was triggered by a "clear and unmistakable termination of benefits" set forth in a letter from defendant that "explained the reason for the termination and apprised Leporace that he could appeal that decision." And finally, in *Sunlight Elec. Contracting Co. v. Turchi*, 2011 WL 4086077, at *10 (E.D. Pa. Sept. 13, 2011), the court found that plaintiff, Sunlight Electrical Contracting Co., cannot complain of not knowing about alleged nonpayment when "Sunlight itself [] submitted its invoices to the defendants with the payment periods the firm had itself determined," which defendant then failed to pay.

Unlike those cases, this Court cannot say that there has been clear repudiation here. Similar to sending an invoice, such as what had occurred in *Sunlight Elec.*, an analogous situation in this case would have been if Mr. Wartella had made an inquiry to Guardian regarding his post-termination commissions, which then Guardian explicitly denied. The Amended Complaint, however, is devoid of any suggestion whether such an inquiry or an ensuing repudiation occurred. Thus, more discovery is warranted before a finding of repudiation can be made.

14

The purported "Field Representative Plan," which was incorporated by reference in the purported employment agreement, contains a provision that is unclear on its face as to how it treats field representatives whose termination was not as a result of retirement or death. Though it references the fact that such representatives would receive "GIWL, SUPP, and group insurance compensation policy years one through ten inclusive," it is unclear to which policies these acronyms refer, whether "years one through ten inclusive" refer to the period of ten years after termination, and whether such compensation would include renewal commissions. As for the June 2007 letter, there is no positive statement, as required by the repudiation principle, that Mr. Wartella's renewal commission payments would cease, especially since the letter ostensibly only included an explanation of "welfare and pension benefits" that Mr. Wartella would receive, and there is nothing to suggest that renewal commissions would fall under that category. The Court will not equate a conclusion by negative inference with an "outright repudiation." *Cf. Andrews,* 158 A.3d at 130 (refusing to equate an honest disagreement over the language of an agreement with an "absolute and unequivocal refusal to perform.")

Finally, the Court declines to exercise its discretion to convert the motion into one for summary judgment, a possibility raised by both parties. Doc. 34 at 13; Doc. 37 at 12. "The 'decision to convert a motion to dismiss to a motion for summary judgment is generally committed to the district court's discretion,' but in making this decision, a court must give the parties notice so that they may respond." *Hyldahl v. Denlinger,* 661 F. App'x 167, 172–73

15

(3d Cir. 2016) (citing *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992)).

"Because the summary judgment process presupposes the existence of an adequate record, courts are obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Id.* (internal citations omitted).

Arguably, Mr. Wartella had notice of the possibility of conversion from Guardian's opening brief, which claimed that conversion is not necessary in order for the Court to consider the extrinsic documents. As discussed above however, these documents are riddled with ambiguity. And without further discovery, Mr. Wartella would not have an opportunity to establish "an adequate record." On the Amended Complaint and motions papers alone, it cannot be determined whether Mr. Wartella's employment agreement is substantively the same as the unsigned copy furnished to the Court, how the Field Representative Plan document should be interpreted, whether there are other communications from Guardian to Mr. Wartella that explicitly deny him post-termination renewal commissions, or whether Mr. Wartella made an affirmative inquiry to Guardian regarding the commissions due to him. Thus, a conversion to summary judgment would be fruitless at this stage, as the scant record before the Court would not resolve the disputed issues of fact at the heart of this claim.

## V. Conclusion

For the reasons outlined above, Defendant's motion to dismiss Count I of the

Amended Complaint (Doc. 30) will be denied. A separate Order shall issue.


Robert D. Mariani
United States District Judge